

**UNITED STATES**
**OFFICE OF PERSONNEL MANAGEMENT**
WASHINGTON, DC 20415-1100

OFFICE OF
THE INSPECTOR GENERAL

Reply to:
Debarring Official
Office of the Assistant Inspector General
for Legal Affairs
OIG/OPM
1900 E St., NW., Rm. 6400
Washington, DC 20415-1110

May 12, 2005

Sheldon Krantz, Esq.
Piper and Marbury
1200 19th St., NW.
Washington, DC 20036

Re: Dr. Rande H. Lazar

Dear Mr. Krantz:

This letter transmits my decision regarding your contest of the Office of Personnel Management's (OPM) February 4, 2005, suspension of your client, Dr. Rande Lazar, as a provider of health care services in the Federal Employees Health Benefits Program (FEHBP). In reaching my decision, I considered the entire administrative record, including the written materials you submitted and the information presented at your April 11, 2005, in-person presentation on behalf of Dr. Lazar.

OPM suspended Dr. Lazar on February 4, 2005, based on his indictment filed in the United States District Court for the Western District of Tennessee, Western Division, for violating 18 U.S.C. § § 1347 and 2.

The regulatory grounds for suspension are contained in title 5, Code of Federal Regulations, §890.1031. In brief, this regulation requires that, for a suspension to be imposed, (1) there is adequate evidence to conclude that the suspended health care provider committed a violation which, if proven, would be a basis for debarment, and (2) the suspending official must determine that immediate action to suspend the provider is necessary to protect the health and safety of FEHBP-covered persons.

Dr. Lazar's January 20, 2004, indictment constitutes a finding of probable cause that he committed criminal violations of a nature that, if he were convicted of them, would constitute grounds for mandatory debarment under 5 USC §8902a(b)(1). Therefore, I have concluded that the evidentiary threshold of 5 CFR §890.1031(a)(1) is met.

A suspension is strictly protective in nature. As such, 5 CFR §890.1031(c) affords the suspending official significant discretionary authority to consider whether risks to the public interest exist, and whether suspension is necessary in view of such risks. Under this authority, I have determined that the seriousness of the conduct for which Dr. Lazar was indicted

Sheldon Krantz, Esq.                                                                    2

demonstrates that his actions pose a risk to the public interest, including the health and safety of FEHBP-covered persons. I considered the following factors in reaching this conclusion:

1. Dr. Lazar billed for performing sphenoid sinus surgery on young children (5 and younger), when he knowingly did not perform the surgeries, nor were the surgeries medically necessary.

2. Dr. Lazar required child-patients to have CT scans (enhanced X rays) which were performed by radiologists. The radiologist's findings concluded that sphenoid sinuses were not yet developed, and if they were, the radiologists concluded from the CT scans that the sphenoid sinuses were normal and clear of any disease. Accordingly, he subjected these children to unnecessary medical procedures.

3. Dr. Lazar falsified the operative notes by stating and causing to be stated that he used forceps to crack open the sphenoid sinuses of young patients, knowing that he could not crack open the sphenoid sinuses because, as the radiologists' finding concluded, the sphenoid sinuses had not developed, and if they were developed, the radiologists concluded from the CT scans that the sphenoid sinuses were normal and clear of any disease. Under federal law and regulations, these medical and claims records are available to other providers and insurance companies for purposes of making future decisions regarding health care of patients. Particularly because the affected patients are very young children who are not able to represent their own interests, it is foreseeable that Dr. Lazar's fraudulent records might contribute to incorrect, and potentially harmful, health care decisions on the part of medical personnel and insurance companies.

4. Dr. Lazar did not disclose the radiologists' findings to many of the parents of the pediatric patients prior to performing the sphenoid surgery, thereby creating inaccurate and misleading beliefs on the part of the persons responsible for making decisions regarding the health care of their children.

I also considered your statements regarding the potential financial consequences to Dr. Lazar that would result from his suspension. Based on my determinations that (1) Dr. Lazar's indictment identifies *bona fide* concerns regarding patient health and safety and (2) the impact of the suspension beyond FEHBP cannot be definitively ascertained, the record does not support a conclusion that the public interest served by the suspension is outweighed by the possible financial effects on Dr. Lazar.

Accordingly, I have decided that Dr. Lazar's February 4, 2005, suspension should remain in effect, pending the outcome of judicial proceedings resulting from the January 20, 2004, indictment. Suspension prohibits Dr. Lazar from receiving any payment, either directly or indirectly from FEHBP funds, for items or services he furnishes as a health care provider during the period of the suspension. This means that payment is prohibited whether it is made directly to Dr. Lazar by an FEHBP carrier, or indirectly by a covered person who then submits a claim to their FEHBP health insurance plan for reimbursement.

Sheldon Krantz, Esq.                                                    3

This decision regarding Dr. Lazar's suspension constitutes the final agency action under 5 CFR §890.1038. We will monitor Dr. Lazar's case as it moves through the criminal justice system and will take appropriate action with regard to his suspension once those proceedings are resolved.

Sincerely,

J. David Cope
Suspending Official