## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DR. RANDE LAZAR, et al, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 05-1370 (RBW) |
| v. | ) | |
| | ) | |
| OFFICE OF PERSONNEL MANAGEMENT, | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFFS' MOTION FOR SUMMARY REVERSAL

Plaintiffs Dr. Rande Lazar and Otalaryngology Consultants of Memphis, P.C., through

their undersigned counsel, hereby move for summary reversal of the final action of the Office of

Personnel Management, dated May 12, 2005, that suspended Dr. Lazar as a provider of health

care services under the Federal Employees Health Benefits Act, as amended, 5 U.S.C. § 8901 et

seq.

The grounds and authorities for this Motion are set forth in the accompanying

Memorandum in Support of Motion for Summary Reversal.

Respectfully submitted,

_Mary E. Gately_

Sheldon Krantz, DC Bar No. 424546
William D. Weissman, DC Bar No. 083469
Mary E. Gately, DC Bar No. 419151
**DLA Piper Rudnick Gray Cary US LLP**
1200 Nineteenth Street, N.W.
Washington, D.C. 20036-2412

Telephone: (202) 861-3900
Facsimile: (202) 223-2085

*Attorneys for Plaintiffs*

Dated:  May 1, 2006

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DR. RANDE LAZAR, et al, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 05-1370 (RBW) |
| v. | ) | |
| | ) | |
| OFFICE OF PERSONNEL MANAGEMENT, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' MEMORANDUM IN
## SUPPORT OF MOTION FOR SUMMARY REVERSAL

Sheldon Krantz, DC Bar No. 424546
William D. Weissman, DC Bar No. 083469
Mary E. Gately, DC Bar No. 419151
**DLA Piper Rudnick Gray Cary US LLP**
1200 Nineteenth Street, N.W.
Washington, D.C. 20036-2412
Telephone: (202) 861-3900
Facsimile: (202) 223-2085

*Attorneys for Plaintiffs*

Dated: May 1, 2006

TABLE OF CONTENTS

Statement of the Case and Prior Proceedings ............................................................................2

Statement of Facts .........................................................................................................................3

   A.  The Original Indictment ........................................................................................3

   B.  The Superseding Indictment ..................................................................................4

   C.  OPM Initially Identifies the Indictment as a Billing Dispute ...........................5

   D.  The Notice of Suspension ......................................................................................6

   E.  Dr. Lazar Challenges the Suspension ...................................................................7

   F.  OPM's Continues Its Investigation After the Personal Appearance ...........................8

   G.  OPM Upholds the Suspension ...............................................................................9

   H.  The Underlying Indictment is Flawed ..............................................................11

   I.  The Notice of Appeal and Administrative Record ........................................11

Summary of Argument ...............................................................................................................12

Argument .....................................................................................................................................15

   I.  Applicable Standard of Review. ..........................................................................15

   II.  OPM Does Not Have the Statutory Authority to Suspend Dr. Lazar. ...........................16

   III.  The Suspension Order is Invalid Because OPM Failed to Adhere to its Own
      Procedural Requirements, Made Findings Without Any Evidentiary Support,
      and Abused its Discretion in Upholding the Suspension Order. .................................19

      A.  OPM Failed to Provide Dr. Lazar With Fair Notice of the Grounds for his
         Suspension. ...........................................................................................20

         1.  OPM Informed Dr. Lazar That He Was Being Suspended Based on the
            Original Indictment. ..........................................................................21

         2.  OPM Relied on the Superseding Indictment, Not the Original
            Indictment. ......................................................................................21

         3.  The Superseding Indictment is Substantially Different From the
            Original Indictment. ..........................................................................22

         4.  The Inadequate Notice Deprived Dr. Lazar of the Right to Challenge
            the Suspension. ...............................................................................23

B.  OPM's Findings Are Unsupported by Evidence in the Record.............................24

C.  The Agency Improperly Weighed the Competing Interests of the Government and Dr. Lazar and His Patients and Therefore Was Arbitrary and Capricious. ......................................................................................................25

D.  OPM Failed to Consider Important Aspects of the Evidence and Provided Explanations that Run Counter to the Evidence Before the Agency.....................27

E.  OPM's Finding that Immediate Action Was Required is Not Supported by Substantial Evidence...............................................................................................29

IV. Dr. Lazar Was Denied Due Process of Law. ...............................................................30

Conclusion .................................................................................................................................32

## PLAINTIFFS' MEMORANDUM IN
## SUPPORT OF MOTION FOR SUMMARY REVERSAL

Dr. Rande Lazar and Otalaryngology Consultants of Memphis, P.C. ("Plaintiffs" or collectively referred to as "Dr. Lazar"), hereby submit this Memorandum in Support of their Motion for Summary Reversal of the final action of the Office of Personnel Management ("OPM"), dated May 12, 2005, that suspended Dr. Lazar as a provider of health care services under the Federal Employees Health Benefits Act, as amended, 5 U.S.C. § 8901 et seq. ("FEHBA" or the "Act").

This suspension should be set aside as unlawful because (a) OPM lacked authority to suspend Dr. Lazar; (b) there is not substantial evidence on the record, taken as a whole, to support the OPM's findings; (c) OPM's action constitutes an abuse of discretion; and (d) Dr. Lazar was denied his constitutional right to due process of law.

### Statement of the Case and Prior Proceedings

On February 4, 2005, OPM suspended Dr. Lazar from participating as a provider in the FEBHP, citing the authority provided in its regulations at 5 C.F.R. § 890.1031. In the suspension letter, OPM stated that the specific grounds for the suspension was the January 20, 2004 indictment returned against Dr. Lazar in the United States District Court for the Western District of Tennessee for alleged violations of 18 U.S.C. § 1347 and 18 U.S.C. § 2.[1]

Dr. Lazar challenged the suspension in a prehearing memorandum submitted to OPM on April 4, 2005 and at a personal appearance (the "Personal Appearance") conducted before J. David Cope, OPM's suspending official, on April 11, 2005. In a letter dated May 12, 2005 (the

---

[1]  Section 1347 provides penalties for defrauding a health care benefit program. Section 2 provides that one who assists in a criminal enterprise is punishable as a principal. The allegations in the indictment consist of billing irregularities, including "upcoding" office visits, improper billing for services provided by medical fellows, and billing for medical procedures that the government claims were not performed.

"Final Action Letter"), OPM issued a decision that its "February 4, 2005 suspension should remain in effect pending the outcome of judicial proceedings resulting from the January 20, 2004 indictment." This letter further stated that it constituted the final agency action under 5 C.F.R. § 890.1038.

Dr. Lazar filed a timely Notice of Appeal in this Court pursuant to 5 U.S.C. § 8902a(b)(1) on July 11, 2005.

### Statement of Facts

Dr. Lazar has been a highly-respected ear, nose and throat specialist in Memphis, Tennessee since 1984 (R.16, 33-49).[2] Until his indictment in January, 2004, Dr. Lazar was the leading provider of ear, nose and throat services to TennCare[3] patients in the Memphis area. Approximately 40% of his practice is dedicated to providing medical care to the underserved in Memphis and rural west Tennessee (R.26).

### A.    The Original Indictment

On January 20, 2004, a federal grand jury in Memphis returned a 115 count indictment (the "Original Indictment") alleging billing irregularities against Dr. Lazar (R.139).[4] The charges in the Original Indictment fall into the following categories:

---

[2] "R." refers to the administrative record (including the supplement) filed by OPM.

[3] TennCare is the Tennessee Medicaid program (R.8).

[4] The Original Indictment was not included in the administrative record submitted by OPM in this action even though the letter sent to Dr. Lazar notifying him of OPM's suspension specifically states that the basis for the suspension is this indictment. A copy of the Original Indictment is attached hereto as Exhibit 1 and Dr. Lazar requests that the Court add it to the record. A motion to supplement the record to include the Original Indictment is being filed contemporaneously herewith. OPM has no objection to the Court taking judicial notice of the Original Indictment pursuant to Fed. R. Evid. 201, but does object to Dr. Lazar's motion to supplement the record to add the Original Indictment.

- submitting alleged false claims related to frontal sinus surgery (counts 2-63);

- submitting alleged false claims by "upcoding" of office visits (counts 64-99);

- allegedly billing for services performed by medical fellows (counts 100-105); and

- allegedly billing for the services of a physician in Dyersburg, Tennessee under another physician's name despite the fact that this physician had his own Medicare and insurance company provider numbers. (counts 106-115).

OPM's counsel advised Dr. Lazar's counsel that OPM first learned about the indictment through a press release issued by the Department of Justice. A press release issued on January 20, 2004, the date of the Original Indictment, described the charges against Dr. Lazar as "insurance fraud." A copy of the press release is attached hereto as Exhibit 2.[5]

No complaints had been filed against Dr. Lazar in the 20 years of his medical practice prior to the Indictment (R.25). Even after his indictment, all but one of the insurance programs in which he participated agreed to reinstate Dr. Lazar as a provider in good standing in their programs (R.23).

## B. The Superseding Indictment

A superseding indictment (the "Superseding Indictment") was issued against Dr. Lazar (R.91-134). Although the Superseding Indictment is undated, the docket report for the Western District of Tennessee indicates that it was issued on November 19, 2004. *See United States v. Rande Harris Lazar*, Case No. 04-20017-D, United States District Court for the Western District of Tennessee (hereinafter, the "Tennessee Action"), at Docket No. 193. The Superseding

---

[5] Dr. Lazar requests that the Court take judicial notice of the press release. Counsel for OPM has informed counsel for Dr. Lazar that OPM will agree to the Court taking judicial notice of the press release pursuant to Fed. R. Evid. 201.

Indictment charged Dr. Lazar with a series of new allegations that went significantly beyond the Original Indictment, including allegations that Dr. Lazar billed for procedures that were not performed and not medically necessary.  No trial date has been set.

### C.    OPM Initially Identifies the Indictment as a Billing Dispute

The administrative record reflects that OPM received notice of the Original Indictment by March 15, 2004 (R.138-41).[6]  After learning of the charges against Dr. Lazar, OPM took no action against Dr. Lazar for more than ten months.  The earliest reference to any action by OPM against Dr. Lazar is on January 26, 2005, when Juanita ("Juan") Smith, a program analyst with OPM, completed a "case assignment sheet" (R.89).  Ms. Smith indicates in the case assignment memorandum that she obtained a copy of the original January 20, 2004 indictment against Dr. Lazar as part of her review (R.89).  The program analyst described the charges against Dr. Lazar as follows:

- billing for frontal sinus surgery on over 100 children when he did not perform the surgeries and they were not medically necessary.

- billing for medical services, including surgeries, under Dr. Lazar's provider number when the services were actually performed by uncredentialed "fellows."

- using billing codes to reflect that he had face-to-face meetings with patients that lasted 15-30 minutes when he was with the patient for no more than 10 minutes.

- billing for office visits following surgery when the follow-up visits were included in the reimbursement for surgery.

---

[6] The docket report included in the administrative record reflects that a PACER report was generated on March 15, 2004 (*see* R.141), although OPM listed the report as being dated March 11, 2005 in the Table of Contents for the administrative record.

(R.89.)  The program analyst did not identify or discuss any potential threat to the health or safety of patients.

### D.   The Notice of Suspension

On February 3, 2005, David Cope, the OPM suspending official, reviewed Dr. Lazar's file and "determined that the case reflected significant elements of potential risk or harm to the health or safety of FEHBP enrollees" (R.69).  The suspending official found the following specific indicia that he considered to represent risk and harm:

> (1) Dr. Lazar subjected his patients to unnecessary procedures, including CT scans, as part of his scheme to fraudulently document the need for sphenoid sinus surgery on young patients.

> (2) Dr. Lazar did not disclose the actual findings of the CT procedures (i.e. that the children's sphenoid sinuses had not yet developed) to the parents of the pediatric patients, thus creating inaccurate and misleading beliefs on the part of the persons responsible for making decisions regarding the health care of their children.  It is readily foreseeable that such factually incorrect beliefs could have led the parents to make erroneous, and potentially harmful, health care decisions for their children in the future.

> (3) Dr. Lazar created, or directed the creation of, extensive documentary material, including falsified reports of surgeries, to support fraudulent health insurance claims for purported treatment of sphenoid sinus conditions in pediatric patients, the records of which may be available to other providers and insurance companies, and thereby might contribute to incorrect, and potentially harmful, health care decisions on the part of medical personnel and insurance companies.

(R.69.)

On February 4, 2005, OPM suspended Dr. Lazar from participation in the FEHBP program.  According to OPM, the basis for the suspension was the Original Indictment:

> OPM's authority to suspend you is contained in its regulations at 5 CFR 890.1031(b).  The specific grounds for your suspension is your January 20, 2004, indictment filed in the United States District Court for the Western District of Tennessee.  We determined that, because of the nature, duration, and seriousness of the offenses for which you were indicted, immediate action to suspend you is in the public interest.

(R.68.)

After Dr. Lazar provided timely notice of his intention to contest the suspension, OPM advised Dr. Lazar of the procedures for submitting information and arguments opposing his suspension (R.62). Among other things, OPM informed Dr. Lazar that his Personal Appearance was not intended to be a formal adjudication or a fact-finding hearing, but an opportunity to present oral arguments directly to the agency (R.62). OPM also advised Dr. Lazar of the rules governing the personal appearance, including the prohibition on submitting documents to the OPM at the Personal Appearance and the rule against having third parties (other than his representative) attend the Personal Appearance (R.63, 52-54).

### E.    Dr. Lazar Challenges the Suspension

Dr. Lazar submitted a written opposition to the suspension on April 4, 2005. In this written response, Dr. Lazar addressed in detail how the charges against him originated with allegations raised by an ex-office manager after she was terminated for cause because of deficient billing practices and after $95,000 was missing from the business account (R.17). Her allegations did not relate to patient health or safety or the overall quality of care (R.14-28). Dr. Lazar detailed how the suspension would have a negative impact on the availability of care for TennCare (Tennessee's Medicaid program) patients in the Memphis area and would devastate his practice, as more than 40% of his patients are TennCare eligible.

Finally, Dr. Lazar discussed how the state licensing board, hospitals, and local insurance carriers all chose to permit him to continue to practice despite the allegations in the indictment, based in part on a substantial number of letters of support provided by patients, members of the Memphis medical community, and the chief executive officer of one of Tennessee's largest administrators of the state's Medicaid program (R.14-49). In addition, the chairman of the

department of surgery at The University of Tennessee-Memphis LeBonheur Children's Medical
Center noted that, after initially placing Dr. Lazar on probationary suspension upon learning of
the indictment, his full clinical privileges were reinstated after their investigation indicated that
Dr. Lazar had not placed any children in jeopardy (R.36).

Dr. Lazar, along with his counsel, made his Personal Appearance before the OPM
suspending official on April 11, 2005. In accordance with the procedures outlined in OPM's
letter regarding the Personal Appearance (R.62-63), Dr. Lazar requested that his Personal
Appearance be tape recorded, but no recording was made and no transcript of the Personal
Appearance is available.[7] At the Personal Appearance, Dr. Lazar explained that the suspension,
based on the January 20, 2004 indictment, was unjustified and inappropriate because, among
other reasons, the allegations in the indictment related to billing issues, not to patient health and
safety issues. He also emphasized that the adverse impact of the suspension on his medical
practice would be profound because it would render him ineligible to receive funds from other
government programs, including Medicare, Tricare, and Medicaid, which constitute a majority of
his practice (R.2). Under the Federal Acquisition Streamlining Act of 1994, a suspension of a
provider under the FEHB program renders the provider ineligible to participate in all other
government benefit programs. Federal Acquisition Streamlining Act of 1994, § 2455(b), 31
U.S.C. § 6101 note.

### F.   OPM's Continues Its Investigation After the Personal Appearance

After Dr. Lazar's Personal Appearance, Mr. Cope instructed his sanctions analyst, Ms.
Smith, to contact the fraud investigator with the U.S. Attorney's office to discuss the point raised

---

[7]   OPM also produced no notes of the Personal Appearance in the administrative record even though
OPM's representatives at the meeting took notes.

by Dr. Lazar that the allegations in the indictment relate to technical errors, not to patients' health and safety. According to Ms. Smith's memorandum to the file, the investigator stated that "there is certainly more involved than just technical errors" and "referred me back to the superseding indictment, stating that clearly the allegations deal with the necessity of operations on these patients" (R.142) (emphasis added). Dr. Lazar was not informed that the suspending official expanded the scope of the proceedings beyond the original indictment and was given no opportunity to rebut the fraud investigator's statements.

The record also reflects that, after the April 11, 2005 Personal Appearance, the OPM program analyst contacted the Office of Inspector General ("OIG") at the Department of Health and Human Services to discuss the effect of the OPM suspension. In that conversation, Ms. Smith purportedly confirmed that while other federally-funded programs could use OPM's suspension as a basis to deny payments to Dr. Lazar, their actual decisions whether to do so were independent of OPM's authority (R.2). No record of this conversation was made and Dr. Lazar was provided no opportunity to rebut this point.

## G. OPM Upholds the Suspension

On May 12, 2005, OPM issued the Final Action Letter announcing its decision that Dr. Lazar's suspension would remain in effect pending the outcome of judicial proceedings resulting from the January 20, 2004 indictment (R.3-5). After considering "the entire administrative record," the suspending official concluded that the seriousness of the conduct for which Dr. Lazar was indicted "demonstrates that his actions pose a risk to the public interest, including the health and safety of FEHBP-covered persons" (R.3, 4).

OPM also rejected Dr. Lazar's claim that severe adverse financial consequences would result from the suspension. Despite recognizing that "general due process concepts require us to

- 9 -

consider [this issue] in the overall context of our decision of his contest" (R.2), the suspending

official rejected these factors and determined that "the impact of the suspension beyond FEHBP

cannot be definitively ascertained" (R.4).  OPM's determination was based upon OPM's

understanding that "[w]hile other federal or federally-funded programs could use our suspension

as a basis to deny payment from their own fisc to Dr. Lazar, their actual decisions whether to do

so are independent of our authority," and therefore "it is by no means certain that the ultimate

effect of our suspension would be to cut him off from all federal funds" (R.2).

The underlying findings upon which the agency's decision were based are contained in a

note to the file dated May 12, 2005, the same day as the final agency action (R.1-2).  In this

memorandum, the suspending official described the findings regarding risks to the health and

safety of FEHBP-covered patients in the following manner:

> Upon our reading Dr. Lazar's indictment at the time he was initially
> suspended, we interpreted Dr. Lazar's alleged conduct as having involved
> risk to FEHBP enrollees because he performed unnecessary and invasive
> surgical procedures on very young children, without informing or
> obtaining the consent of their parents.[8]
> * * *
> After the personal appearance, the sanctions analyst re-contacted the fraud
> investigator who was handling the case for the U.S. Attorney's office in
> Memphis to obtain additional information about the conduct that underlay
> the indictment.  The investigator stated that our original interpretation of
> the indictment accurately reflected the government's case, and that the
> government would prove at trial that Dr. Lazar performed and billed for
> surgical procedures, knowing that they were unnecessary.
> * * *
> On the basis of this record, I have concluded that our office has reasonably
> interpreted the indictment as charging Dr. Lazar with conduct that posed a
> risk of harm to FEHBP enrollees.  This meets the regulatory requirement
> of 5 CFR 890.1031(b) as to grounds for his suspension.  There is no basis

---

[8] The original indictment says nothing about surgical procedures without obtaining consent of the
patient's parents. There is no evidence in the record to support this finding.

- 10 -

whatever for our office to question the validity of the indictment or the grand jury process in this case.

(R.1.)

## H.    The Underlying Indictment is Flawed

On August 27, 2004, Dr. Lazar filed a motion (the "Motion to Suppress Evidence and Dismiss Charges") in the United States District Court for the Western District of Tennessee seeking to suppress all evidence seized from his offices resulting from illegal search warrants and to dismiss all counts in the indictment resulting from the searches. (Tennessee Action, Docket No. 78).

On June 13, 2005, following a hearing, a magistrate judge recommended granting the motion and found that two search warrants used to seize records from Dr. Lazar were invalid and did not provide authority for a constitutional search of Dr. Lazar's offices, and therefore recommended that the evidence seized during the searches be suppressed.[9]  The District Judge has not yet ruled on the magistrate's report and recommendation.

## I.    The Notice of Appeal and Administrative Record

On July 11, 2005, Plaintiffs initiated this action by filing a Notice of Appeal, the procedure for initiating judicial review spelled out in the statute. *See* 5 U.S.C. § 8902a(h)(2). The filing of the Notice of Appeal triggered a requirement that OPM "promptly file" a certified copy of the administrative record. *Id.* OPM ignored this requirement for six months until this Court issued an Order directing the agency to file the record by February 20, 2006. On February 17, 2006, the agency filed what it described as the administrative record. Upon review of this

---

[9] A copy of the Report and Recommendation on Defendant's Motion to Suppress All Evidence and to Dismiss All Charges Resulting from Searches Under Illegal Warrants is attached hereto as Exhibit 3.

filing, Dr. Lazar identified a number of significant omissions from the administrative record. On February 22, 2006, Dr. Lazar, through counsel, wrote OPM to inquire about the following items that did not appear in the record: (i) the Original Indictment upon which, according to OPM, the suspension was based; (ii) the Suspending Officer's notes from the Personal Appearance; and (iii) documents evidencing communications between OPM and the Department of Justice, which communications were referenced in a memorandum to the file (R.6-7).

In a March 15, 2006 letter, OPM responded by stating that the only additional document it located was a Memorandum for the Record prepared by its program investigator related to her conversation with the Department of Justice fraud investigator. A copy of the March 15, 2006 letter is attached hereto as Exhibit 4. OPM also informed Dr. Lazar that, notwithstanding its notice to him that his suspension was based upon the Original Indictment, the agency actually relied on the Superseding Indictment in making the decision to suspend him:

> OPM did not possess nor rely on a copy of the original indictment in making its decision to suspend Dr. Lazar. The administrative record correctly includes a copy of the superseding indictment that OPM used in its determinations regarding suspension.

Exhibit 4.

### Summary of Argument

1.     OPM's suspension of Dr. Lazar as a provider of health care services under the Act is improper and this Court should set the suspension aside as unlawful. As set forth below, OPM did not have the statutory authority to suspend Dr. Lazar under the Act since the Act only granted OPM the authority to debar and not to suspend. It is a well established administrative law principle that an agency, like OPM, has no power to act unless and until Congress confers power upon it. In this case, Congress authorized OPM to debar FEHBP providers only under specific conditions that are not applicable to Dr. Lazar (*inter alia*, after conviction for certain

offenses or loss of licenses). As a result, OPM does not have the power to suspend Dr. Lazar based on an indictment.

2.      Even if OPM had suspension authority, OPM's suspension of Dr. Lazar is fatally flawed. First, OPM failed to follow its own rules to the prejudice of Dr. Lazar by not providing Dr. Lazar with fair notice of the basis of his suspension. OPM informed Dr. Lazar that the basis of his suspension was the Original Indictment issued on January 20, 2004 when in fact OPM relied upon the Superseding Indictment issued on November 19, 2004, a materially different indictment than the Original Indictment. Dr. Lazar contested the suspension in response to the notice referencing only the Original Indictment, not the Superseding Indictment, and was thus denied a meaningful opportunity to contest the suspension.

Second, OPM's findings that support the suspension are not supported by substantial evidence in the record and constitute an abuse of discretion. Since OPM's stated basis for the suspension is the Original Indictment, OPM's findings supporting the indictment must be judged against the allegations in the Original Indictment. OPM found a risk to the health and safety of FEHBP covered persons based on a finding that Dr. Lazar performed unnecessary and invasive surgical procedures without consent, a finding that is not found anywhere in the Original Indictment. The allegations in the Original Indictment relate to billing for procedures that were not even alleged to be performed, not to performing medically unnecessary procedures without consent.

Third, OPM improperly discounted evidence that Dr. Lazar presented on the effect of OPM's suspension on his medical practice. Dr. Lazar presented evidence that OPM's suspension as a matter of law would trigger an automatic suspension from participation in federally funded government programs, which constitute a majority of his practice. While OPM

- 13 -

acknowledged the due process concerns raised by a system wide suspension, it erroneously concluded that the impact of its suspension could not be definitively ascertained. By failing to consider the impact of a government-wide suspension and by misunderstanding the applicable law, OPM abused its discretion.

Fourth, OPM acted in an arbitrary and capricious manner when it failed to consider important aspects of the evidence presented by Dr. Lazar. OPM simply ignored the significant contrary evidence presented to it.

Fifth, OPM is required to take "immediate" action to suspend a provider when it is necessary to protect the health and safety of persons covered by the Act. OPM, however, did not take immediate action after learning of the charges against Dr. Lazar. In fact, OPM delayed over ten months before it took any steps to suspend Dr. Lazar. This undercuts OPM's claim that immediate action was necessary to protect the health and safety of patients. OPM's relaxed pace in pursuing this suspension is hardly indicative of a concern that patient health and safety were at risk.

3.       Finally, the open ended nature of Dr. Lazar's suspension raises due process concerns. OPM's suspension remains in effect pending the outcome of judicial proceedings resulting from the January 20, 2004 indictment. Thus far, the suspension has been in effect for more than sixteen months based solely on the indictment and no trial date has as yet been set. Moreover, the underlying indictment in this case is not a reliable basis upon which to base the suspension because a Magistrate Judge has recommended that evidence underlying the indictment be suppressed due to an unconstitutional search and seizure.

- 14 -

<u>**Argument**</u>

**I.    Applicable Standard of Review.**

Jurisdiction is vested in the United States District Court for the District of

Columbia pursuant to the Federal Employee Health Benefits Act, 5 U.S.C. § 8901 et seq., which

allows a party adversely affected by a final decision of OPM under this statute to seek review

directly in this Court. 5 U.S.C. § 8902a(h)(2). Upon consideration of the appeal, the "court shall

have the power to enter, upon the pleadings and evidence of record, a judgment affirming,

modifying, or setting aside, in whole or in part, the decision of the Office, with or without

remanding the case for a rehearing." *Id.* The reviewing court may not set aside OPM's action

"unless there is not substantial evidence on the record, taken as a whole, to support the findings

by [OPM] of a cause for action under this section or unless action taken by [OPM] constitutes an

abuse of discretion." *Id.*

This language is similar to the arbitrary and capricious review standard under the

Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 706(2)(A) ("The reviewing court shall ...

hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law"); *Robinson v.*

*Cheney*, 876 F.2d 152, 155 (D.C. Cir. 1989); *Michigan Citizens for an Independent Press v.*

*Thornburgh*, 868 F.2d 1285, 1291 (D.C.Cir. 1989) ("'substantial evidence' terminology connotes

a substantive standard no different from the arbitrary and capricious test").

The factors that make an agency action arbitrary and capricious or an abuse of discretion

under the APA are:

- reliance by the agency on factors that Congress did not intend it to
  consider;

- failure to consider an important aspect of the problem;
- providing an explanation for the action that runs counter to the evidence before the agency; or
- is so implausible that it cannot be ascribed to a difference of viewpoint or agency expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

As discussed below, the suspension of Dr. Lazar should be set aside because (a) OPM did not have the authority to suspend him, (b) there is not substantial evidence on the record, taken as a whole, to support OPM's findings, (c) OPM's actions were arbitrary and capricious and an abuse of discretion, and (d) Dr. Lazar was denied due process.

## II.     OPM Lacks the Statutory Authority to Suspend Dr. Lazar.

As a threshold matter, the Court should set aside the suspension because OPM lacks statutory authority to suspend Dr. Lazar. The statute, pursuant to which OPM's regulation was issued, only granted the agency authority to debar, not to suspend.

The authority claimed by OPM for Dr. Lazar's suspension is 5 C.F.R. § 890.1031, a regulation promulgated in 2003 pursuant to 5 U.S.C. § 8902a. This statute, entitled "*Debarment and Other Sanctions*," provides for: (1) mandatory debarment of health care providers who have been convicted of certain offenses (§ 8902a(b)); (2) permissive debarment of health care providers who have lost their license or committed certain offenses (§ 8902a(c)); and (3) civil monetary penalties in certain circumstances (§ 8902a(d)). Nothing in the statute authorizes suspension of health care providers or imposition of sanctions based solely upon an indictment of a health care provider, the underlying basis for OPM's suspension in this case.

Congress knew the difference between debarment and suspension. The mandatory debarment provisions in § 8902a provide that OPM "shall bar" any provider "that is currently

- 16 -

debarred, suspended, or otherwise excluded from any procurement or nonprocurement activity"
from participating in the FEHBP. § 8902a(b)(5) (emphasis added). In other words, OPM must
debar a provider who has been suspended or debarred from some other procurement or
nonprocurement program, but it has no authority to initiate its own suspension for any reason.
Moreover, Congress knew what it was doing when it granted debarment but not suspension
authority to OPM because when it intended to grant suspension authority to other agencies, it did
so with an express grant of the authority to suspend. *See*, *e.g.*, 7 U.S.C. § 5662(c) (granting the
Department of Agriculture specific authority to "suspend or debar for 1 or more years any
exporter, assignee, or other participant from participating in" its export promotion programs); 12
U.S.C. § 1818 (granting Federal Deposit Insurance Corporation authority to terminate or suspend
an officer of a federally insured depository institution); 21 U.S.C. § 824 (granting the Drug
Enforcement Agency the authority to revoke or suspend a pharmacy's registration to dispense
controlled drugs).

Moreover, the grounds for an FEHBP provider losing eligibility are spelled out precisely
in the Act and Dr. Lazar's suspension is not based on any of the permissible grounds as set forth
in 5 U.S.C. § 8902a. The statute authorizes debarment when a provider has been *convicted* (not
indicted) for certain criminal offenses. § 8902a(b). It also authorizes debarment in other
specified circumstances, none of which is present in this case, such as revocation or suspension
of a provider's license or upon a determination of excess charges by OPM. § 8902a(c). The
statute does not authorize OPM to exclude a provider or to impose a penalty based solely on an
indictment, as OPM did in this case. Given the specificity with which Congress spelled out the
circumstances under which a provider may lose his eligibility from participating in the FEHBP
program, there is no basis for OPM to remove a provider from eligibility beyond those

- 17 -

authorized in the statute, whether labeled as debarment (the term used in the statute) or

suspension (an action nowhere mentioned in the statute, except when imposed by some other

agency).

OPM relies on regulations it promulgated in 2003 that purport to authorize the suspension

of a provider who has been indicted for certain offenses even absent statutory authority to do so.

*See* 5 C.F.R. § 890.1031.  At the time it promulgated the regulation, OPM conceded that the

statute never mentions suspensions as an authorized action.  But it inferred that because

Congress authorized OPM to impose other sanctions, OPM could on its own add suspension

authority to the list of sanctions in its regulations and establish the criteria for imposing the

sanction of suspension because some other agencies have such authority.  *See* 68 Fed. Reg. 5470,

5475 (Feb. 3, 2003).  This is an agency granting itself authority that Congress did not grant.  As

such, OPM's regulation is in excess of statutory authority.  APA, 5 U.S.C. § 706(2)(c).

It is a basic administrative law principle that agencies have "no power to act ... unless

and until Congress confers power upon it."  *American Library Ass'n v. FCC*, 406 F.3d 689, 698

(D.C. Cir. 2005) (quoting *Louisiana Public Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986)

(internal quotes omitted); *see also Michigan v. EPA*, 268 F.3d 1075, 1081 (D.C. Cir. 2001)

(citing *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)) ("It is axiomatic that an

administrative agency's power to promulgate legislative regulations is limited to the authority

delegated by Congress" (internal quotes omitted)).  Regulations that exceed or are inconsistent

with the congressional grant of authority are invalid and are properly vacated.  *See American*

*Library Ass'n v. FCC*, 406 F.3d at 699-705 (striking down as invalid and *ultra vires* regulation

that exceeded scope of authority delegated by Congress); *Davis County Solid Waste*

*Management v. EPA*, 101 F.3d 1395, 1404-05 (D.C. Cir. 1996) (vacating EPA emission

standards that conflicted with the plain meaning of the statute and exceeded agency authority).

When Congress sets specific conditions under which a statutory remedy may be pursued, that

remedy is not available when those conditions have not been met. *See Cooper Industries, Inc. v.

Aviall Services, Inc.*, 543 U.S. 157, 167 (2004) ("[T]o assert a contribution claim under [the

statute], a party must satisfy the conditions of [the statute]").  Here, Congress authorized OPM to

terminate FEHBP providers under precisely stated conditions, using the term "debarment" to

describe the action, and OPM has no authority to base a termination on other conditions.

Because OPM suspended Dr. Lazar under a regulation that is itself beyond the agency's

statutory authority and therefore ultra vires, Dr. Lazar's suspension was unauthorized and hence

unlawful.  The Court should direct OPM to reinstate Dr. Lazar forthwith.

### III.   The Suspension Order is Invalid Because OPM Failed to Adhere to its Own Procedural Requirements, Made Findings Without Any Evidentiary Support, and Abused its Discretion in Upholding the Suspension Order.

Even if the Act granted OPM authority to suspend a provider (and it did not), OPM's

suspension of Dr. Lazar is fatally flawed because, among other things, OPM (a) failed to comply

with its own procedural requirements; (b) made findings and drew inferences that are not

supported by any evidence in the record; (c) used a flawed legal analysis in dismissing Dr.

Lazar's claim that the suspension would have drastic financial consequences on him; (d) ignored

relevant evidence; and (e) failed to act in accordance with the statute's immediacy requirement.

In so doing, OPM abused its discretion and acted arbitrarily and capriciously.

Under the rules promulgated by OPM, the grounds for suspension include but are not

limited to:

> (1) indictment or conviction for a criminal offense that would result
> in a mandatory debarment upon conviction (*see* 5 U.S.C. § 8902a(b));

>    (2) indictment or conviction for a criminal offense that reflects a risk
>    to the health, safety, or well-being of FEHBP-covered individuals; or
>
>    (3) credible evidence of a violation that would warrant debarment.

5 C.F.R. § 890.1031(a)(1) (cross-referencing § 890.1031(b)).  In addition, the suspension rule

requires a determination by the suspending official that "immediate action . . . is necessary to

protect the health and safety of persons covered by FEHBP."  5 C.F.R. § 890.1031(a)(2)

(emphasis added).  Thus, the suspending official had to make two findings to justify the

suspension:  (1) that Dr. Lazar's indictment fell into one of the categories listed in section

890.1031(b)(1)-(2) and (2) that immediate action was necessary to protect the health and safety

of FEHBP-covered persons.  As discussed below, the suspending official acted arbitrarily and

capriciously and abused his discretion in making these findings.

### A.    OPM Failed to Provide Dr. Lazar with Fair Notice of the Grounds for his Suspension.

OPM's suspension of Dr. Lazar is invalid because the agency failed to provide Dr. Lazar

with proper notice of the suspension.  The OPM regulation requires that any notice of suspension

contain information "indicating ... the basis for the suspension."  5 C.F.R. § 890.1033.  When an

agency gives notice of sanctions to a government contractor or provider, this notice must be

specific enough to afford the provider an opportunity to challenge the sanction.  *See In re ATL,*

*Inc. v. United States*, 736 F.2d 677, 683 (Fed. Cir. 1984) (notice must be "sufficiently specific to

permit the suspended contractor to collect and present relevant evidence refuting the charges

contained therein").  The notice provided by OPM to Dr. Lazar did not meet these tests.

OPM informed Dr. Lazar that the basis of his suspension was the Original Indictment

(R.68, 89) when it appears that the suspending official relied on the Superseding Indictment

without informing Dr. Lazar that the scope of the suspension proceeding had changed.  Because

- 20 -

there are significant new allegations in the Superseding Indictment, Dr. Lazar was denied an opportunity to respond to allegations on which the suspending official apparently relied that are not in the Original Indictment. This violated the notice requirements in the OPM regulation.

### 1. OPM Informed Dr. Lazar that He Was Being Suspended Based on the Original Indictment.

In her January 26, 2005 case assignment memorandum, the OPM program analyst noted that she retrieved and reviewed the Original Indictment (R.89), not the Superseding Indictment. OPM's initial suspension letter to Dr. Lazar on February 4, 2005 informed Dr. Lazar that "the specific grounds for your suspension is your January 20, 2004, indictment filed in the United States District Court for the Western District of Tennessee" (R.68). In a February 28, 2005 letter providing the rules for a personal appearance in connection with his opposition to the suspension, the agency again informed Dr. Lazar that the grounds for the suspension was the Original Indictment (R.62). The Final Action Letter again refered to the January 20, 2004 Original Indictment as the basis for satisfying the evidentiary threshold in 5 C.F.R. § 890.1031(a)(1) for suspension (R.3). Based on these notices, Dr. Lazar contested the suspension and presented evidence at his Personal Appearance to respond to the allegations in the Original Indictment, not the Superseding Indictment.

### 2. OPM Relied on the Superseding Indictment, Not the Original Indictment.

After notifying Dr. Lazar that his suspension was based on the allegations in the Original Indictment, OPM relied on the Superseding Indictment as the basis for denying Dr. Lazar's contest and suspending him. OPM's reliance on the Superseding Indictment is not in dispute. OPM's attorney informed Dr. Lazar that his suspension was based on the allegations in the Superseding Indictment, not the Original Indictment. *See* Exhibit 4. The record also indicates

that OPM relied specifically on the Superseding Indictment in issuing the Final Action Letter. On April 13, 2005, two days after Dr. Lazar's personal appearance before the Suspending Official, OPM's sanctions analyst spoke with the Justice Department Fraud Investigator who "referred me back to the <u>superseding indictment</u>, stating that clearly the allegations deal with the necessity of operations on these patients, that in most cases, these procedures were performed on the children when their CT scans showed no signs of disease" (R.142) (emphasis added).

### 3.   The Superseding Indictment is Substantially Different from the Original Indictment.

There are substantial differences between the Original Indictment and the Superseding Indictment. The Superseding Indictment contains five additional counts that do not appear in the Original Indictment. The Superseding Indictment also contains allegations regarding billings for a different type of medical procedure than the allegations in the Original Indictment. The allegations in the Original Indictment focus on "Frontal Sinus Surgeries Billing" (Exhibit 2, ¶¶ 23-25), whereas the Superseding Indictment added claims relating to billings for "sphenoid sinus surgery," an entirely different procedure. *See* Superseding Indictment, ¶¶ 28-33 (R.99-100).

The Superseding Indictment also contains new allegations, including the allegation that Dr. Lazar billed for procedures on children that showed no signs of disease. *See* Superseding Indictment, ¶ 32 (alleging that Dr. Lazar "billed for performing sphenoid sinus surgery on some children whose CT scans showed no evidence of disease") (R.100). The Original Indictment contains no allegations that Dr. Lazar billed for procedures on children when their CT scans showed no signs of disease. OPM relied upon these new allegations in the Superseding Indictment as evidence supporting the suspension of Dr. Lazar. *See* Final Action Letter (R.3-5) and the suspending official's notes (R. 1-2).

### 4. The Inadequate Notice Deprived Dr. Lazar of the Right to Challenge the Suspension.

Dr. Lazar was not provided with notice that his suspension was based on allegations related to claims that he billed for performing sphenoid sinus surgery on some children whose CT scans showed no sign of disease. Instead, he presented his case to the Suspending Official on the basis of the charges incorporated in the notice of suspension with the cross-reference to the Original Indictment, such as the allegations related to improper billings for "frontal sinus surgery" (R.18).

Even after Dr. Lazar's personal appearance, OPM conducted a further investigation by contacting the OIG and the fraud investigator at the Department of Justice to obtain additional bases for its decision (R. 1-2). Dr. Lazar was never afforded an opportunity to respond to those post-Personal Appearance findings.

The lack of opportunity to rebut an allegation that had not been made at the time of the suspension constitutes the denial of a meaningful opportunity to contest the suspension that had been issued. Here, in a form of bait and switch, Dr. Lazar was told that his suspension was based on the more limited original indictment, but then, without notice, the suspending official relied on allegations in the Superseding Indictment. By introducing factors that went beyond the basis for the February 4, 2005 suspension, Dr. Lazar was deprived of his right under OPM's regulations to "challenge a suspension by filing a contest." 5 C.F.R. § 890.1035(a).

An agency may not violate its own rule to the prejudice of others. *See, e.g.*, *Battle v. FAA*, 393 F.3d 1330, 1336 (D.C. Cir. 2005) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)). In this case, OPM caused prejudice to Dr. Lazar when it violated its notice rule and deprived him of the opportunity to challenge the true basis of his indictment. Accordingly, the suspension order should be set aside.

**B.    OPM's Findings Are Unsupported by Evidence in the Record.**

According to the Final Action Letter, the suspending official met the first requirement for

suspension by relying upon the Original Indictment because, if Dr. Lazar were convicted of the

charges contained therein, it would constitute grounds for mandatory debarment under the Act.

He then determined that immediate action was necessary because "the seriousness of the conduct

for which Dr. Lazar was indicted demonstrates that his actions pose a risk to the public interest,

including the health and safety of FEHBP-covered persons." (R.3-4).  These findings can only be

compared to the allegations in the Original Indictment, which provided the underlying factual

basis for Dr. Lazar's suspension.  In this case, the suspending officer based these determinations

on findings that are not supported by evidence in the record.

In deciding to suspend Dr. Lazar, the suspending officer relied upon a finding that

> Dr. Lazar ... performed unnecessary and invasive surgical procedures
> on very young children, without informing or obtaining the consent
> of their parents [R.1].

There is no evidence in the record to support a finding that Dr. Lazar performed any surgical

procedures on children without informing or obtaining consent of their parents.  The Original

Indictment, which is the stated basis for Dr. Lazar's suspension, does not contain any allegations

that Dr. Lazar performed any procedures on children without parental consent, much less

invasive surgical procedures without consent.  The allegations in the Original Indictment relate

to billing for procedures that are not even alleged to have been performed.  *See* Original

Indictment, ¶¶ 23-29.  The Original Indictment never mentions or alludes to performing any

procedures without parental consent.

Dr. Lazar's suspension was also based on a finding that he

> required child-patients to have CT scans (enhanced X rays) which
> were performed by radiologists.  The radiologists' findings concluded

> that sphenoid sinuses were not yet developed, and if they were, the
> radiologists concluded from the CT scans that the sphenoid sinuses
> were normal and clear of any disease. Accordingly, he subjected
> these children to unnecessary medical procedures [R.3-4.].

Again, there is no evidence in the record to support a finding that Dr. Lazar subjected children to

unnecessary medical procedures of any kind. The Original Indictment does not contain any

allegation that Dr. Lazar subjected children to unnecessary procedures. The Original Indictment

does not allege that he requested CT scans that were not indicated or medically necessary. Nor

does it allege that he performed surgeries that were not medically necessary.

The Original Indictment, which provided the sole factual basis for Dr. Lazar's

suspension, lacks any basis upon which OPM could have made these findings. To the extent that

OPM based its findings on the Superseding Indictment and not the Original Indictment, these

findings would still be without support in the record because the Superseding Indictment lacks

any finding that Dr. Lazar performed unnecessary and invasive surgical procedures without

informed consent or that he subjected children to unnecessary medical procedures. *See*

Superseding Indictment, ¶¶ 23-39. Because the Original Indictment lacks substantial evidence to

support OPM's findings, the agency action constitutes an abuse of discretion and should be

declared invalid.

### C. The Agency Improperly Weighed the Competing Interests of the Government and Dr. Lazar and His Patients and Therefore Was Arbitrary and Capricious.

The Suspending Official's decision to uphold the suspension also was based upon

improper balancing of competing interests between OPM as administrator of the Federal

Employees Health Benefits Program on the one hand, and Dr. Lazar's and his patients' interest

in his continued ability to provide medical services to his patients dependent on federally-funded

benefits on the other hand. As noted by the suspending official, Dr. Lazar emphasized at his

Personal Appearance that the effect of suspension on his medical practice would be profound because it would trigger a suspension from participation in other government programs, including Medicare, Medicaid and Tricare, which constitute the majority of his practice (R.2). The suspending official recognized that the prospect of a system-wide suspension raised due process concerns (R.2). Nevertheless, in a memorandum to the file written the same day as the Final Action Letter, the suspending official found no basis for concluding that suspending Dr. Lazar from participating in the FEHBP would result in him being disqualified from participating in other government benefit programs (R.2). This conclusion was incorrect as a matter of law, but formed the basis for his determination that "the impact of the suspension beyond FEHBP cannot be definitely ascertained" (R.4).

The Federal Acquisition Streamlining Act of 1994 provides that OPM suspensions are automatically effective throughout all other federal agency procurement and nonprocurement activities and programs. *See* Federal Acquisition Streamlining Act of 1994, § 2455(b), 31 U.S.C. § 6101 note ("No agency shall allow a party to participate in any procurement or nonprocurement activity if any agency has debarred, suspended, or otherwise excluded ... that party from participation in a procurement or nonprocurement activity"). As a result, Dr. Lazar's suspension under the FEHBP program had the automatic effect of suspending him from receiving funds from any federal or federally-funded program, including the medical programs that constitute the majority of his practice.

In weighing the programmatic interests of the FEHBP against the impact of suspension on Dr. Lazar and his patients, the suspending official grossly understated the impact of a suspension on Dr. Lazar and his patients. The suspending official's action was arbitrary and capricious and an abuse of discretion because he failed to consider a relevant factor (the true

impact of suspension on Dr. Lazar and his patients), misunderstood the legal consequences of his action (the automatic suspension across all government benefit programs), and thereby distorted the process of weighing competing interests by omitting from the scale the full measure of the drastic consequences of a suspension on Dr. Lazar and his patients. That is a classic example of arbitrary agency action that must be set aside on judicial review. "[A]n order may not stand if the agency has misconceived the law." *Teva Pharmaceuticals USA, Inc. v. FDA*, 441 F.3d 1, 5 (D.C. Cir. 2006) (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943) (internal quotation marks omitted)); *see also Gulf Power Company v. FERC*, 983 F.2d 1095, 1099 (D.C. Cir. 1993) (vacating sanction as arbitrary and capricious when agency failed to balance the relevant equitable considerations).

### D.    OPM Failed to Consider Important Aspects of the Evidence and Provided Explanations that Run Counter to the Evidence before the Agency.

In suspending Dr. Lazar, the suspending official was required to base his decision on the administrative record as a whole, to respond to all significant evidence contrary to the suspension, and to provide a rational explanation of his decision. *See Morall v. DEA*, 412 F.3d 165, 176-77 (D.C. Cir. 2005) (in examining whether there is "substantial evidence," court must take "into account contradictory evidence or evidence from which conflicting inferences could be drawn"); *Lakeland Bus Lines, Inc. v. NLRB*, 347 F.3d 955, 962 (D.C. Cir. 2003) (substantial evidence must take into account contrary evidence); *El Rio Santa Cruz Neighborhood Health Ctr. v. HHS*, 396 F.3d 1265, 1278 (D.C. Cir. 2005) (finding action arbitrary and capricious in failing to address relevant evidence before it). In making its decision, OPM failed to consider the important aspects of the evidence presented, including highly relevant evidence presented by Dr. Lazar.

- 27 -

In his memorandum and at the Personal Appearance, Dr. Lazar presented evidence that all of the state licensing officials, state Medicaid authorities, hospitals, and all but one of the insurance carriers were aware of the charges in the indictment but chose to permit Dr. Lazar to continue his medical practice (R.15, 31, 34, 36). The suspending official completely disregarded this evidence. Dr. Lazar also presented evidence that the suspension had, and will continue to have, a significant and detrimental impact on underserved TennCare patients who require ear, nose and throat medical services and live in Memphis and rural areas in West Tennessee (R.13-16, 31). The suspending official also ignored this evidence (or discounted it based on his mistaken understanding that the OPM suspension would not impact other federal programs, such as Medicaid). The suspending official likewise ignored evidence that the indictment allegations relate only to a miniscule portion of Dr. Lazar's actual yearly billings (R.2), that Dr. Lazar had never been the subject of patient complaints (R.2, 12), and that Dr. Lazar has an excellent reputation for quality of care both within the medical community and among his patients (R.3, 34-49).

Dr. Lazar also presented evidence that the Health Sciences Center at the University of Tennessee-Memphis, after initially placing him on administrative suspension following his indictment, lifted the suspension and reinstated his full clinical privileges following an investigation that concluded that Dr. Lazar had not placed any patients in jeopardy (R.36). There is no evidence in the record, however, that OPM considered this evidence or that OPM contacted any representatives of the University of Tennessee-Memphis to discuss the university's investigation and findings regarding Dr. Lazar.

It is arbitrary and capricious for an agency not to respond to significant evidence that bears on the issue before the agency. In this case, Dr. Lazar presented material evidence to rebut

the allegations against him. Because the suspending official ignored this evidence in reaching his decision, the agency action was arbitrary and should be set aside.

###    E.    OPM's Finding that Immediate Action Was Required is Not Supported by Substantial Evidence.

OPM's regulations require that, as a condition of imposing any suspension, the agency must find that "immediate action to suspend the provider is necessary to protect the health and safety of persons covered by FEHBP." 5 C.F.R. § 890-1031(a)(2). When it initially suspended Dr. Lazar on February 4, 2005, OPM determined that "because of the nature, duration, and seriousness of the offenses for which you were indicted, immediate action to suspend you is in the public interest" (R.68). OPM did not explain how it concluded immediate action was required or why alternative actions short of suspension could not adequately protect the government's interest while the criminal proceedings were pending.

OPM's terse conclusion that "immediate action ... is necessary" is belied by the agency's slow pace in initiating these suspension proceedings. OPM was aware of the Original Indictment for at least ten months, and possibly for more than a year, before it took any action to suspend Dr. Lazar. According to the record, OPM generated a PACER docket report of Dr. Lazar's Original Indictment on March 15, 2004 (R.141). OPM's counsel informed Dr. Lazar that the agency first learned of the indictment through a press release issued by the Department of Justice. The press release announcing the indictment of Dr. Lazar was issued on January 20, 2004, more than a year before OPM took action to suspend Dr. Lazar. *See* Exhibit 1. While the regulation may not require a specific finding of immediacy or necessity to issue a suspension, 5 C.F.R. § 890.1031(c), the necessity of immediate action is an essential factor in a decision to suspend on an indictment which by its very nature is an accusation, not an adjudication, and is based on a standard of proof (*i.e.* probable cause) that itself is less than the standard of proof for

- 29 -

a suspension (*i.e.* preponderance of the evidence), *see* 5 C.F.R. § 890.1040(e). If the agency is going to rely on an indictment rather than an adjudication, simple fairness requires a showing of a clear need for immediate action where no alternative short of suspension will suffice. Here, OPM's failure to act for more than ten months casts grave doubt that immediate action was required to protect the health and safety of covered persons, particularly in this case where the thrust of the government's allegation are alleged billing irregularities. In the absence of record support for the finding that immediate action is necessary as required by the OPM regulations, the suspension cannot stand. *See Sloan v. Department of Housing and Urban Development*, 231 F.3d 10, 17-18 (D.C. Cir. 2000).

**IV.    Dr. Lazar Was Denied Due Process of Law.**

An agency may not impose even a temporary suspension without providing the "core requirements" of due process: adequate notice and a meaningful hearing. *Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 6 (D.C. Cir. 1998). In this case, because OPM failed to provide "fair notice" of the bases for his suspension, he was denied due process of law. *Rollins Environmental Service v. EPA*, 937 F.2d 649, 654 (D.C. Cir. 1991). Because there is a statutory and regulatory basis for addressing these lapses (*see* Section III.A, *supra*), it is unnecessary to present them a second time in a constitutional due process context.

However, a separate due process concern arises from relying on an indictment for an open-ended suspension. To be sure, the Supreme Court has found that a temporary suspension on the basis of an indictment could comport with due process, as it upheld a similar suspension provision for indicted bank officials. *FDIC v. Mallen*, 486 U.S. 230, 241 (1988). In *Mallen*, the Court acknowledged the officials' due process interest in continued employment, but in defining what process is due, the Court gave great weight to a congressional finding "that prompt

- 30 -

suspension of indicted bank officers may be necessary to protect the interests of depositors and to maintain public confidence in our banking institutions." *Id.* at 240-41. In reaching the decision that the temporary suspension was consistent with due process, the Court emphasized that the FDIC regulation at issue provided for post-suspension procedures that assured that a hearing and post-hearing decision would follow within 90 days. *Id.* at 242-43.

Here, there is no congressional finding that prompt suspension may be necessary. Indeed, as noted earlier, Congress has not granted OPM any suspension authority. *See* Section II, *supra*. Dr. Lazar has been subject to a suspension for more than sixteen months based solely on an indictment, far longer than the 90 days upheld in *Mallen*. The open-ended duration of this suspension based on an indictment calls into question whether the core requirements of due process have been satisfied. In Dr. Lazar's case, moreover, there are additional due process concerns because the ordinary indicia of reliability attached to an indictment are not present. A United States Magistrate Judge has found that the indictment was based upon evidence obtained through an unconstitutional search and recommended suppression of evidence and dismissal of the charges arising out of the unconstitutional search. The suspect nature of the indictment lends further support to a finding Dr. Lazar has been deprived of his constitutional right to due process.

## Conclusion

For these reasons, the suspension of Dr. Lazar was unauthorized and invalid and should

be set aside and OPM should be directed to reinstate Dr. Lazar as an FEBHP provider.


Respectfully submitted,


*Mary E. Gately*
Sheldon Krantz, DC Bar No. 424546
William R. Weissman, DC Bar No. 083469
Mary E. Gately, DC Bar No. 419151
J. David Folds, DC Bar No. 449791
**DLA Piper Rudnick Gray Cary US LLP**
1200 Nineteenth Street, N.W.
Washington, D.C. 20036-2412
Telephone: (202) 861-3900
Facsimile: (202) 223-2085

*Attorneys for Plaintiffs*

Dated:  May 1, 2006


#4787871v6

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing (i) Motion for Summary Reversal and

accompanying (ii) Plaintiff's Memorandum in Support of Motion for Summary Reversal have

been served by regular U.S. mail on this 1st day of May 2006 or have been served electronically

upon the following parties:

> Doris Denise Coles-Huff
> Office of the United States Attorney
> 555 4th Street, N.W.
> Washington, D.C. 20530

*Mary E. Gately*
Mary E. Gately